## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---------------------------------------------------

KRISTY SHINN                :
315 Lamp Post Lane      :
Camp Hill, PA 17011      :     Civil Action No.: _____
          Plaintiff,  :
                    :     **JURY TRIAL DEMANDED**
      v.              :
                    :
PENNSYLVANIA SCHOOL  :
BOARDS ASSOCIATION    :
400 Bent Creek Boulevard  :
Mechanicsburg, PA 17050  :
                    :
         Defendant.  :

---------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff, Kristy Shinn ("Plaintiff"), by and through her undersigned counsel, for her Complaint against the Pennsylvania School Boards Association ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant of Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

2. Specifically, Plaintiff contends that Defendant subjected her to a hostile work environment due to sexual harassment, failed to take appropriate remedial action to address the sexual harassment, and retaliated against her for making a good

1

faith complaint of discrimination based on race and sex and sexual harassment, which led to Plaintiff's constructive discharge.

3.    As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

4.    Plaintiff, Kristy Shinn, is a citizen of the United States and Pennsylvania, where she currently maintains an address at 315 Lamp Post Lane, Camp Hill, PA 17011.

5.    Defendant, Pennsylvania School Boards Association, is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 400 Bent Creek Boulevard, Mechanicsburg, PA 17050.

## JURISDICTION AND VENUE

6.    Paragraphs 1 through 5 are hereby incorporated by reference as though the same were fully set forth at length herein.

7.    On or about May 5, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (c), and 43 P.S. § 959(a).  Plaintiff's EEOC Charge was docketed as EEOC Charge No.

2

530-2023-05088.  Plaintiff's EEOC Charge was dual filed within one hundred and eighty (180) days of the unlawful employment practice.

8.    By correspondence dated September 17, 2023, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff that she had ninety (90) days to file suit against Defendant.

9.    Plaintiff filed the instant action within the statutory time frame applicable to her federal claims.

10.    Although one (1) year has not yet passed since Plaintiff dual filed her Charge with the EEOC and the PHRC, courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one (1) year deadline expires during the court proceedings.  O'Malley v. Dowd Marketing, Inc., No. 17-cv-1419, 2018 WL 6313616, at *10-11 (M.D. Pa. Nov. 15, 2018) (citations omitted).

11.    Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

12.    This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.

13.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

3

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

15. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania in this judicial district.

## FACTUAL BACKGROUND

16. Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17. On or about September 7, 2022, Plaintiff began work for Defendant as a Senior Manager of Professional Development in Defendant's Professional Development Department.

18. Plaintiff's position required that she work closely with her direct supervisor William Smeltzer ("Mr. Smeltzer," white male), Defendant's Director of Professional Development, to create and help train approximately 500 school boards in Pennsylvania.

19. Plaintiff's desk was near Mr. Smeltzer's office.

20. On or about September 8, 2022, Plaintiff dropped off her new hire paperwork with Dara Burke ("Ms. Burke," white female), Defendant's Associate Director of Employee Engagement.

21. While Plaintiff was in Ms. Burke's office, Ms. Burke asked Plaintiff if she filled out her ethnicity correctly because Plaintiff put "Hispanic."

22. Plaintiff told Ms. Burke that Plaintiff's mother is Mexican and that, although she is white-presenting, Plaintiff identifies as Hispanic.

23. On or about September 12, 2022, Plaintiff had a one-on-one meeting in Mr. Smeltzer's office.

24. The meeting was a standard "check-in," and Mr. Smeltzer's office door was shut.

25. Mr. Smeltzer told Plaintiff that he and his wife had not been expecting to have a baby boy when their son was born.

26. Mr. Smeltzer then told Plaintiff that they decided not to circumcise their son's foreskin.

27. Mr. Smeltzer told Plaintiff that his son's foreskin is still intact.

28. Plaintiff did not respond to Mr. Smeltzer's comments about his son's foreskin.

29. On or about October 6, 2022, Mr. Smeltzer invited Plaintiff out to get a beer.

30. Mr. Smeltzer said to Plaintiff that they should be friends.

31. Plaintiff explained to Mr. Smeltzer that they have a working relationship and not a friendship.

32.    Plaintiff declined Mr. Smeltzer's invitation to get a drink.

33.    On or about October 17, 2022, Plaintiff participated in an online meeting with Mr. Smeltzer and Nathalia Griffith ("Ms. Griffith," black female), Defendant's E-Learning Manager.

34.    During this meeting, Mr. Smeltzer criticized the work product that Ms. Griffith and Plaintiff worked on and said words to the effect of "there aren't enough white men in some of the stuff we push out and it makes me uncomfortable."

35.    On or about November 4, 2022, Plaintiff had a meeting with Mr. Smeltzer and Cytha Guynes ("Ms. Guynes," white female), Defendant's Senior Professional Development Manager.

36.    Ms. Guynes and Plaintiff had the same role and responsibilities.

37.    Plaintiff told Mr. Smeltzer that he treated her differently than Ms. Guynes.

38.    Mr. Smeltzer asked Ms. Guynes to leave the meeting, which she did.

39.    Plaintiff then told Mr. Smeltzer that he had been treating Plaintiff differently than Ms. Guynes by looking at her and not Plaintiff when speaking to both of them, inviting her to do member trainings instead of Plaintiff, speaking to Plaintiff in a different tone, requiring Plaintiff to work more hours than her, and disapproving Plaintiff's flex time requests more often than he does her requests.

40. Plaintiff told Mr. Smeltzer that she is a white-presenting woman of color and asked him to have more self-awareness.

41. Mr. Smeltzer told Plaintiff that he would work on it.

42. On or about November 10, 2022, Plaintiff was in Mr. Smeltzer's office and he was using Plaintiff's graphing calculator to look at a specific school district's Board Self-Assessment.

43. Mr. Smeltzer inquired if Plaintiff had trouble with children texting on their phones when she was a teacher.

44. Plaintiff told Mr. Smeltzer that she occasionally had trouble with students texting on their graphing calculators.

45. Mr. Smeltzer then looked at me and said aloud "80085."

46. This number sequence is used by children to spell out "boobs."

47. Plaintiff left Mr. Smeltzer's office and avoided him for the rest of the day.

48. On or about November 16, 2022, Plaintiff participated in a one-on-one meeting with Mr. Smeltzer in his office with the door closed.

49. Mr. Smeltzer told Plaintiff that he would be out of the office on Friday for a medical procedure.

50. Mr. Smeltzer then told Plaintiff he was getting a vasectomy.

51.     On or about November 21, 2022, Plaintiff had several meetings in Mr. Smeltzer's office.

52.     During these meetings, Mr. Smeltzer constantly made comments about his vasectomy, including but not limited to saying, "I wish I could sit and be comfortable" and "I can't cross my legs because it hurts."

53.     On or about December 5, 2022, Ms. Burke emailed Plaintiff and said that Plaintiff's request for a flex schedule for her to work remotely on Tuesdays and Thursdays had been approved.

54.     On or about December 23, 2022, Mr. Smeltzer approved Ms. Guynes to work remotely due to remote weather; however, Ms. Griffith and Plaintiff were not informed of the option to work remotely and came into the office.

55.     On or about January 12, 2023, Plaintiff took part in a team meeting with Mr. Smeltzer, Ms. Griffith, and Ms. Guynes.

56.     Toward the end of the meeting, Ms. Griffith told Mr. Smeltzer in front of the team that she would no longer be in any meetings with Mr. Smeltzer privately, and that she needed a third person to be present in all meetings between Mr. Smeltzer and her.

57.     Ms. Smeltzer told Ms. Griffith that they would talk about that after the team meeting.

58. On or about January 16, 2023, Plaintiff had a check-in with Mr. Smeltzer.

59. Plaintiff told Mr. Smeltzer that she was not feeling appreciated or successful.

60. Plaintiff told Mr. Smeltzer that actions speak louder than words, and that she wanted to celebrate the online course project when it is completed because it has been harder to work on than it needed to be.

61. Mr. Smeltzer responded that Plaintiff should not be so truthful with other people in the office because they might not take Plaintiff's "transparency" as well as he does.

62. On or about January 20, 2023, Britta Barrickman ("Ms. Barrickman"), Defendant's Chief Member Services Officer, informed Plaintiff that Defendant was restructuring the Professional Development Department.

63. Ms. Barrickman said that Plaintiff would now report to her, instead of to Mr. Smeltzer, and that Plaintiff should only speak to Mr. Smeltzer about work projects and day-to-day matters.

64. Ms. Barrickman directed Plaintiff not to discuss this reorganization with anyone else at Defendant to prevent the spreading of rumors.

65. On or about January 23, 2023, Mr. Smeltzer canceled he and Plaintiff's one-on-one meeting, but then called Plaintiff into his office to speak privately.

66.   Later that day, Defendant's Senior Director of Marketing and Communications, Megan Orehek ("Ms. Orehek"), who is three (3) levels above Plaintiff, asked Plaintiff what was going on with Mr. Smeltzer and told Plaintiff that she had not been told anything about it.

67.   Ms. Orehek told Plaintiff that Plaintiff was in the "circle of trust" and that she had a meeting later to learn more about it with Christina Griffiths ("Ms. Griffiths"), Defendant's Chief Operating Officer.

68.   Plaintiff then told Ms. Orehek about Mr. Smeltzer's inappropriate comments and that he was sabotaging Ms. Griffith's and Plaintiff's work.

69.   On or about January 24, 2023, Plaintiff was working remotely for Defendant.

70.   Plaintiff noticed unusual changes being made to the completed work that she did with Ms. Griffith.

71.   Plaintiff asked Mr. Smeltzer on Slack Chat whether he had made any changes to this work, and Mr. Smeltzer responded that he had not made the changes.

72.   However, Plaintiff was able to see in Word's track changes function that Mr. Smeltzer did make the changes.

73.   On or about January 25, 2023, Mr. Smeltzer called Plaintiff on Zoom to tell her about updates that he and Ms. Orehek made to the project Plaintiff was working on.

74. Plaintiff told Mr. Smeltzer that she was constantly feeling unsuccessful and that her work on the course was being undone without her knowledge.

75. Mr. Smeltzer responded by asking Plaintiff how she thought he felt and that he felt like he was walking on eggshells.

76. Mr. Smeltzer asked Plaintiff to talk to him about Plaintiff's stress and what is making her uncomfortable.

77. Plaintiff told Mr. Smeltzer that Plaintiff was instructed not to have one-on-one meetings with him.

78. After the Zoom call with Mr. Smeltzer, Plaintiff asked Ms. Burke if they could talk.

79. Ms. Burke called Plaintiff on Plaintiff's cell phone.

80. Plaintiff told Ms. Burke that Mr. Smeltzer had been sabotaging her work.

81. Plaintiff told Ms. Burke about Mr. Smeltzer's sexually inappropriate and anti-female comments, and Plaintiff said that she feared retaliation for complaining about Mr. Smeltzer.

82. Ms. Burke told Plaintiff that Mr. Smeltzer's behavior was unacceptable and that there were other things in motion to address this issue.

83. Plaintiff asked Ms. Burke if Plaintiff could report to someone besides Mr. Smeltzer as part of her department's reorganization.

84.     Plaintiff emailed Ms. Burke documentation related to their discussion about Mr. Smeltzer's inappropriate conduct.

85.     On or about January 31, 2023, Nathan Mains ("Mr. Mains"), Defendant's Chief Executive Officer, announced through Slack that Shane Pagnotti ("Mr. Pagnotti") was promoted to the position of Senior Director of Board Services and Training effective immediately.

86.     Mr. Pagnotti became Plaintiff's new direct supervisor.

87.     After the announcement, Ms. Burke requested an office meeting with Plaintiff.

88.     Plaintiff attended the meeting, which included Ms. Griffiths, Ms. Burke, and Plaintiff.

89.     Ms. Burke informed Plaintiff that Mr. Smeltzer was being disciplined in that he lost flex schedule privileges and needed to attend training to learn that what he did was wrong.

90.     Ms. Griffiths and Ms. Burke proceeded to tell Plaintiff that she had a reputation for gossiping and that Plaintiff had spread information about Mr. Smeltzer in the office, based on Ms. Orehek reporting it to Ms. Griffiths.

91.     Plaintiff responded that she felt safe talking to Ms. Orehek because she is a leader.

92.    Plaintiff asked them to give Plaintiff an example of her gossiping about Mr. Smeltzer, and they could not provide Plaintiff with one.

93.    Then, Ms. Burke explained to Plaintiff that Ms. Burke and Ms. Griffiths had reached out to outside counsel, who had advised them to terminate Plaintiff for insubordination.

94.    Ms. Burke and Ms. Griffiths told Plaintiff that they did not want to fire Plaintiff.

95.    In lieu of termination, Plaintiff was put on a Performance Improvement Plan ("PIP") and her remote work privileges were revoked effective immediately.

96.    Plaintiff told them that this was retaliation for Plaintiff's complaining about Mr. Smeltzer's inappropriate behavior.

97.    They responded that Plaintiff was being placed on a PIP for talking to Ms. Orehek about Mr. Smeltzer's inappropriate conduct.

98.    Plaintiff told them that she assumed that the PIP would have measurable goals and due dates.

99.    They responded that the PIP would be "open-ended" and that they would follow up with Plaintiff the next day.

100.    Neither Ms. Burke nor Ms. Griffiths spoke to Plaintiff about the PIP the following day.

101. On or about February 1, 2023, Mr. Smeltzer was permitted to work from home, despite the alleged discipline he received for his inappropriate conduct.

102. On or about February 3, Ms. Barrickman requested that Plaintiff email Ms. Barrickman an outline of Plaintiff's position's duties and responsibilities.

103. On or about February 10, 2023, Mr. Pagnotti messaged Plaintiff on Slack and said that she would not be receiving a performance review due to recent changes.

104. Plaintiff responded by requesting to go over the objective and dates for her PIP, which had been discussed approximately ten (10) days earlier.

105. Mr. Pagnotti told Plaintiff that she should probably ask Ms. Burke and that he was unaware that it was his role to review Plaintiff's PIP with her.

106. Plaintiff then messaged Ms. Burke and asked her to discuss Plaintiff's PIP.

107. Ms. Burke responded that she would circle back with Ms. Griffiths and get back to Plaintiff.

108. On or about February 13, 2023, Ms. Burke told Plaintiff that Mr. Pagnotti and Ms. Barrickman were in the middle of reviewing job structures and that Plaintiff would have a meeting once this review was completed.

109. On or about February 24, 2023, Plaintiff submitted a formal complaint of retaliation against Defendant by email to Ms. Burke.

110. In Plaintiff's complaint, she summarized the timeline of events that she believed were retaliatory.

111. Plaintiff requested that Defendant restore her work from home privileges, move Plaintiff's desk away from Mr. Smeltzer's office, and remove any reference to a PIP from her personnel file by no later than February 27, 2023.

112. On or about February 27, 2023, Ms. Burke sent Plaintiff a letter in response to her retaliation complaint.

113. Ms. Burke's letter acknowledged receipt of Plaintiff complaint and indicated that Defendant would investigate Plaintiff's complaint with the assistance of Defendant's outside counsel.

114. Ms. Burke's letter stated that Defendant would not respond to Plaintiff's requests in her retaliation complaint until the investigation was completed.

115. The letter said that Plaintiff could contact Ms. Burke to discuss options for a different desk location.

116. On or about February 28, 2023, Plaintiff emailed Ms. Burke in response to receiving her letter.

117. Plaintiff reiterated her request that Defendant restore her work from home privileges immediately.

118.   Plaintiff requested to be moved to the cubicle previously occupied by Dana Ecker ("Ms. Ecker"), Defendant's Senior Accounting Coordinator.

119.   Plaintiff reminded Ms. Burke that the documentation that Plaintiff sent to her on or about January 25, 2023 outlined Mr. Smeltzer's inappropriate behavior going back to Plaintiff's first full week of work.

120.   On or about March 14, 2023, in response to Defendant's refusal to restore Plaintiff's work from home privileges or to remove my PIP, Plaintiff sent Ms. Burke her resignation letter.

121.   In Plaintiff's resignation letter, Plaintiff detailed the reasons for her resignation.

122.   Plaintiff explained how after she formally reported Mr. Smeltzer's inappropriate behavior, she experienced humiliation and retaliation.

123.   Plaintiff described in detail how Defendant, acting through Ms. Griffiths, Ms. Burke, Ms. Orehek, Mr. Smeltzer, and Ms. Barrickman, subjected Plaintiff to a hostile work environment because of her race and sex, failed to address Mr. Smeltzer's sexual harassment, and retaliated against Plaintiff for reporting Mr. Smeltzer's inappropriate conduct.

124.   Based on the foregoing, Plaintiff avers that Defendant subjected her to a hostile work environment due to sexual harassment, failed to take appropriate remedial action to address the sexual harassment, and retaliated against her for

making a good faith complaint of discrimination based on race and sex and sexual harassment, which led to Plaintiff's constructive discharge, in violation of Title VII and the PHRA.

125. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**29 U.S.C. § 2000e**, *et seq.*
**HOSTILE WORK ENVIRONMENT – SEXUAL HARASSMENT**

126. Paragraphs 1 through 125 are hereby incorporated by reference as though the same were fully set forth at length herein.

127. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of sex in violation of Title VII.

128. Defendant failed to take appropriate remedial action to address the hostile work environment created by sexual harassment that Plaintiff endured and reported to Defendant in good faith.

129. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

130. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including but not limited to:

A.     Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B.     Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.     Pre-judgment interest in an appropriate amount;

E.     Such other and further relief as is just and equitable under the circumstances; and,

F.     Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 29 U.S.C. § 2000e, *et seq.*
## RETALIATION

131. Paragraphs 1 through 130 are hereby incorporated by reference as though the same were fully set forth at length herein.

132. Defendant retaliated against Plaintiff for her good faith complaints about racial discrimination, sex discrimination, and the hostile work environment caused by Mr. Smeltzer's sexual harassment, in violation of Title VII.

133. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

134. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including but not limited to:

A.    Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B.    Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and,

F.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## HOSTILE WORK ENVIRONMENT – SEXUAL HARASSMENT

135.    Paragraphs 1 through 134 are hereby incorporated by reference as though the same were fully set forth at length herein.

136.    Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of sex in violation of the PHRA.

137.    Defendant failed to take appropriate remedial action to address the hostile work environment created by sexual harassment that Plaintiff endured and reported to Defendant in good faith.

20

138. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

139. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C. Pre-judgment interest in an appropriate amount;

D. Such other and further relief as is just and equitable under the circumstances; and,

E. Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## RETALIATION

140.   Paragraphs 1 through 139 are hereby incorporated by reference as though the same were fully set forth at length herein.

141.   Defendant retaliated against Plaintiff for her good faith complaints about racial discrimination, sex discrimination, and the hostile work environment caused by Mr. Smeltzer's sexual harassment, in violation of the PHRA.

142.   Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

143.   As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.   Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B.      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C.      Pre-judgment interest in an appropriate amount;

D.      Such other and further relief as is just and equitable under the circumstances; and,

E.      Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MARZZACCO NIVEN & ASSOCIATES**

By:    /s/ *Benjamin Salvina*
       Benjamin Salvina, Esq.
       945 East Park Drive, Suite 103
       Harrisburg, PA 17111
       TEL: 717-231-1640
       FAX: 717-231-1650
       bsalvina@klnivenlaw.com
       *Attorney for Plaintiff*

Dated: December 18, 2023

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.