# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTY SHINN, | : | CIVIL NO. 1:23-cv-02097 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA SCHOOL | : | |
| BOARDS ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I. Introduction.

Kristy Shinn ("Shinn") brings claims against her former employer, the Pennsylvania School Boards Association ("PSBA"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). In her initial complaint, Shinn brought hostile-work-environment and retaliation claims. The PSBA filed a motion to dismiss the complaint ("first motion to dismiss"), which we granted in part. Specifically, we concluded that Shinn had not included sufficient factual allegations in her complaint to carry a hostile work environment claim, so we dismissed that claim.

We also granted Shinn leave to file an amended complaint as to her hostile work environment claim. Shinn filed an amended complaint with minimal amendments—notably, she changed her hostile work environment claims to claims

for sex discrimination. The PSBA filed a motion to dismiss the amended complaint ("pending motion to dismiss"). We will grant the pending motion to dismiss in part because, as described further herein, we find that Shinn fails to state a claim for sex discrimination. Because Shinn's retaliation claim still states a claim, as we previously explained in our opinion on the first motion to dismiss, we will deny the motion to dismiss in all other respects.

## II. Background and Procedural History.

### A. Procedural History.[1]

On July 3, 2025, we issued an order granting in part and denying in part the first motion to dismiss and a memorandum opinion explaining our decision ("Opinion on the First Motion to Dismiss"). *Docs. 30, 31*. We granted the first motion to dismiss insofar as it sought dismissal of Shinn's hostile-work-environment claims and denied it insofar as it sought dismissal of Shinn's retaliation claims. *Id.* In our Opinion on the First Motion to Dismiss, we wrote:

> Here, in light of this liberal amendment standard, we will grant Shinn leave to amend her complaint as to her hostile-work-environment claims. If Shinn has additional allegations about her workplace conditions that she believes rise to this level, she should include them in an amended complaint.

---

[1] Because we previously summarized the procedural history of this case up to the point at which we resolved the first motion to dismiss, we will summarize only the procedural history since that date. For a more robust procedural history, refer to our opinion on the first motion to dismiss (*doc. 30* at 2–3).

*Doc. 30* at 23–24.  Thus, Shinn's retaliation claims survived the first motion to dismiss, her hostile-work-environment claims did not, and Shinn could file an amended complaint to amend her hostile-work-environment claims to attempt to state a claim. *See generally id.*

On July 23, 2025, Shinn filed an amended complaint. *Doc. 33*.  The amended complaint is nearly identical to the initial complaint, with only the following relevant[2] changes:

> (1)  In the introduction section of the amended complaint, Shinn states that she "contends that [the PSBA] subjected her to discrimination due to her gender and sex, and retaliated against her[,]" whereas in the introduction section of the initial complaint Shinn stated that she "contends that [the PSBA] subjected her to a hostile work environment due to sexual harassment, failed to take appropriate remedial action to address the sexual harassment, and retaliated against her[.]" *Compare doc. 33 ¶ 2 with doc. 1 ¶ 2.*
>
> (2)  In the amended complaint, Shinn states, "By way of background, Plaintiff is a biological female and identifies as the same." *Doc. 33 ¶ 16*.  In the initial complaint Shinn did not state same. *See generally doc. 1*.
>
> (3)  Count I and Count III in the amended complaint are brought for "gender and sex discrimination" under Title VII and the PHRA, respectively. *Doc. 33* at 17, 19.  In the initial complaint, however, Count I and Count III bring hostile-work-environment claims under Title VII and the PHRA, respectively. *Doc. 1* at 17, 20.  The conclusory allegations

---

[2] Shinn also updated the jurisdiction section of her amended complaint as compared to her initial complaint. *Compare doc. 33 with doc. 1.*  Our jurisdiction is not in dispute, however, so we will not summarize those alterations.

setting forth the elements for each cause of action thus also differ between the initial complaint and the amended complaint.

On August 5, 2025, the PHRA filed the pending motion to dismiss the amended complaint, and on August 6, 2025, it filed a brief in support thereof. *Docs. 34, 35*. After being granted an extension of time to do so, Shinn filed a brief in opposition. *Docs. 38, 40*. The PHRA filed a reply brief on September 15, 2025. *Doc. 41*. Thus, this motion is ripe for our consideration.

### B. Allegations in the Amended Complaint.

Shinn, a cisgender woman, began as "a Senior Manager of Professional Development" at the PSBA on September 7, 2022. *Doc. 33* ¶¶ 16, 17. Shinn's direct supervisor was William Smeltzer ("Smeltzer"), a white male and the Director of Professional Development. *Id.* ¶ 18. On September 8, 2022, when Shinn "dropped off her new hire paperwork with Dara Burke" ("Burke"), a white female and the Associate Director of Employee Engagement, Shinn confirmed that "although she is white-presenting, [she] identifies as Hispanic." *Id.* ¶¶ 21, 22.

Shinn alleges that Smeltzer engaged in inappropriate behavior toward her nearly from the beginning of her employment at the PSBA. Shinn describes the following allegedly discriminatory and/or harassing interactions:

> (1) During a one-on-one meeting in Smeltzer's office with the door shut, Smeltzer told Shinn about his and his wife's decision

4

not to circumcise their baby boy who was recently born. *Id.* ¶¶ 23–28.

(2)  Smeltzer told Shinn "that they should be friends" and invited Shinn to get a beer, an invitation that Shinn declined because "they have a working relationship and not a friendship." *Id.* ¶¶ 29–32.

(3)  During a meeting between Shinn, Smeltzer, and Nathalia Griffith ("Nathalia")[3], a black female and the E-Learning Manager at the PSBA, Smeltzer criticized Nathalia and Shinn's work product, including stating that "there aren't enough white men in some of the stuff we push out and it makes me uncomfortable." *Id.* ¶¶ 33, 34.

(4)  Smeltzer allegedly treated Shinn and a woman with the same role and responsibilities (Cytha Guynes, "Guynes") differently by looking at Guynes when speaking to both of them, inviting Guynes to do member trainings instead of Shinn, speaking to Shinn in a different tone, requiring Shinn to work more hours than Guynes, and disapproving Shinn's flex time requests more often than he disapproved Guynes's requests. *Id.* ¶¶ 35–41.

(5)  On one occasion when Smeltzer was using Shinn's graphing calculator for work purposes, Smeltzer and Shinn began discussing children texting on graphing calculators during class, and Smeltzer said "80085[,]" the number sequence "used by children to spell out 'boobs.'" *Id.* ¶¶ 42–46.

(6)  During another closed-door one-on-one meeting with Shinn, Smeltzer informed Shinn he would be out of the office for a vasectomy. *Id.* ¶¶ 48–50.

---

[3] Below, we will introduce Christina Griffiths ("Christina"), the PSBA's Chief Operating Officer.  We mean no disrespect to Nathalia Griffith and Christina Griffiths by using their first names in this opinion; we simply intend to differentiate between two individuals with similar last names who are both involved in Shinn's allegations.

(7) After his vasectomy, during meetings with Shinn Smeltzer "constantly made comments about his vasectomy," like "I wish I could sit and be comfortable" and "I can't cross my legs because it hurts." *Id.* ¶¶ 51–52.

(8) Smeltzer once "approved Guynes to work remotely due to . . . weather[,]" but did not inform Nathalia[4] and Shinn of the option to work remotely, so they came into the office. *Id.* ¶ 54.

(9) During a "check-in" with Smeltzer, Shinn told him that "she was not feeling appreciated or successful" so she "wanted to celebrate the online course project when it is completed because it has been harder to work on than it needed to be." *Id.* ¶¶ 58–60. In response, Smeltzer told Shinn she should "not be so truthful with other people in the office because they might not take Shinn's 'transparency' as well as he does." *Id.* ¶ 61.

(10) While working remotely, Shinn noticed unusual changes made by Smeltzer to work that she and Nathalia had completed, but Smeltzer originally denied making the changes. *Id.* ¶¶ 69–72. When Smeltzer later told Shinn about the updates he and Megan Orehek ("Orehek"), the PSBA's Senior Director of Marketing and Communications, made to Shinn's work, Shinn told Smeltzer "she was constantly feeling unsuccessful and that her work on the course was being undone without her knowledge." *Id.* ¶¶ 66, 73, 74. Smeltzer responded that he felt like he was walking on eggshells and asked Shinn to talk to him about what was making her feel stressed and uncomfortable. *Id.* ¶¶ 75, 76. In response, Shinn told him that she had been instructed not to have one-on-one meetings with him. *Id.* ¶ 77.

Meanwhile, on January 20, 2023, Britta Barrickman ("Barrickman"), the

Chief Member Services Officer at the PSBA, told Shinn that the Professional

---

[4] Within two weeks of this incident, during a meeting with Smeltzer, Guynes, and Shinn, Nathalia told Smeltzer that she would no longer have private meetings with him and would need a third person at all future meetings between them. *Doc. 33* ¶¶ 55–57.

Development Department, of which Shinn's position was a part, was being restructured. *Id.* ¶¶ 17, 62. Barrick said that Shinn would now report to Barrickman instead of Smeltzer and that Shinn should only speak to Smeltzer about work projects and day-to-day matters. *Id.* ¶ 63. She also told Shinn to not discuss the reorganization with others at the PSBA because she did not want rumors to be spread. *Id.* ¶ 64. On January 23, 2023, however, Megan Orehek ("Orehek"), the PSBA's Senior Director of Marketing and Communications (who is three levels above Shinn in the organizational structure), asked Shinn about Smeltzer. *Id.* ¶ 66. She asked Shinn "what was going on with [Smeltzer] and told [Shinn] that she had not been told anything about it." *Id.* Orehek told Shinn that Shinn was in the "circle of trust" and that Orehek "had a meeting later to learn more about it with Christina[,]" the PSBA's Chief Operating Officer. *Id.* ¶ 67. Shinn then told Orehek about the inappropriate comments that Smeltzer made and that he was sabotaging Nathalia's and Shinn's work. *Id.* ¶ 68.

Later, after Shinn and Smeltzer had the above-described Zoom call in which Smeltzer said he felt like he was walking on eggshells, Shinn asked Burke, Associate Director of Employee Engagement, if they could talk. *Id.* ¶ 78. During their phone call, Shinn told Burke that "Smeltzer had been sabotaging her work," that he made "sexually inappropriate and anti-female comments," and "that she feared retaliation for complaining about [] Smeltzer." *Id.* ¶¶ 80, 81. Burke said that

7

"Smeltzer's behavior was unacceptable" and that there were "things in motion to address this issue." *Id.* ¶ 82.  During this call, Shinn also asked Burke if she could report to someone else when her department was reorganized. *Id.* ¶ 83.  After the call, Shinn sent an email documenting their discussion about Smeltzer's inappropriate conduct. *Id.* ¶ 84.

On January 31, 2023, Shane Pagnotti ("Pagnotti") was promoted to the position of Senior Director of Board Services and Training" and became Shinn's direct supervisor. *Id.* ¶¶ 85, 86.  After this was announced, Shinn met with Burke and Christina in Burke's office, where Burke told Shinn that Smeltzer was being disciplined—specifically, Smeltzer lost flex schedule privileges[5] and was required to attend training. *Id.* ¶¶ 87–89.  Then, Christina and Burke told Shinn "that she had a reputation for gossiping" and based on Orehek's report to Christina, Shinn had spread information about Smeltzer in the office. *Id.* ¶ 90.  Shinn told them that she "felt safe talking to [] Orehek because she is a leader." *Id.* ¶ 91.  Shinn also asked them for an example of her gossiping about Smeltzer, which they "could not" provide. *Id.* ¶ 92.  Nevertheless, Burke told Shinn that outside counsel had advised them to terminate Shinn for insubordination, but "that they did not want to fire [Shinn]." *Id.* ¶¶ 93, 94.  Instead, they put Shinn "on a Performance

---

[5] On February 1, 2023, Smeltzer was allowed to work from home, despite what Shinn was told regarding his discipline. *Doc. 33* ¶ 101.

8

Improvement Plan ("PIP")" and revoked her remote work privileges. *Id.* ¶ 95. Shinn told Burke and Christina that this was retaliation for her complaints about Smeltzer's inappropriate behavior, but Burke and Christina explained that the PIP was "for talking to [] Orehek about [] Smeltzer's inappropriate conduct." *Id.* ¶¶ 96, 97. Burke and Christina told her that the PIP would be "open-ended." *Id.* ¶ 99. Although they told Shinn that they would follow up about the PIP the next day, they did not do so. *Id.* ¶¶ 99, 100.

On February 10, 2023, after Pagnotti told Shinn via Slack message that "she would not be receiving a performance review due to recent changes[,]" Shinn asked Pagnotti "to go over the objective and dates for her PIP." *Id.* ¶ 104. Pagnotti replied that he was not aware that it was his role to review Shinn's PIP with her and she should "probably ask Burke[.]" *Id.* ¶ 105. Shinn then messaged Burke and asked Burke to discuss her PIP. *Id.* ¶ 106. Burke said she had to talk to Christina, and then on February 13, 2023, Burke told Shinn that Pagnotti and Barrickman "were in the middle of reviewing job structures and that [Shinn] would have a meeting once this review was completed." *Id.* ¶ 108.

On February 24, 2023, Shinn emailed Burke a formal complaint of retaliation against the PSBA. *Id.* ¶ 109. Burke acknowledged receipt of the complaint in a letter on February 27, 2023. *Id.* ¶¶ 112, 113. In the letter, Burke also stated that the PSBA would investigate Shinn's complaint with outside

9

counsel and would not respond to Shinn's requests (to restore her work-from-home privileges, remove the PIP, and move Shinn's desk away from Smeltzer's office on or before February 27, 2023) until the investigation was completed. *Id.* ¶¶ 111, 114.  Shinn reiterated her requests on February 28, 2023, and sought relief "immediately." *Id.* ¶¶ 116–119.

"On March 14, 2023, Shinn sent Burke her resignation letter because the PSBA had not restored Shinn's work from home privileges or removed her PIP. *Id.* ¶ 120.

### III.  Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to

11

dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

In sum, "[w]e accept as true all factual matters [the plaintiff] alleges, but this complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief." *Beasley v. Howard*, No. 20-1119, 2021 WL 4233947, at *2 (3d Cir. Sept. 17, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  But "[a] claim that relies just on 'conclusory statements,' or on 'threadbare recitals of the elements of a cause of action' without supporting factual allegations, does not establish plausible grounds for relief." *Id*. (quoting *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020)).

**IV. Discussion.**

     Shinn brings claims under both Title VII and the PHRA.  We have federal question jurisdiction over Shinn's Title VII claims and supplemental jurisdiction over Shinn's state law PHRA claims. 28 U.S.C. §§ 1331, 1367.  Generally, claims under the PHRA are interpreted coextensively with and analyzed under the same framework as claims under Title VII. *See e.g.*, *Faush v. Tuesday Morning, Inc.*, 808 F. 3d 208, 213 (3d Cir. 2015); (citing *Brown v. J. Kaz, Inc.*, 581 175, 179, n.1 (3d Cir. 2009); *Atkinson v. LaFayette Coll.,* 460 F.3d 447, 454 n.6 (3d Cir. 2006)).  We thus analyze Shinn's PHRA and Title VII claims together below.

    **A. Sex Discrimination Claims.**

     The PSBA sets forth a variety of arguments why we should dismiss Shinn's sex discrimination claims.  One such argument is that "Shinn's gender discrimination claim is deficient" because the complaint fails to allege facts that

13

satisfy two of the elements required to state a sex discrimination claim. *Doc. 35* at 11.  Specifically, the PSBA argues that Shinn has failed to allege that she "suffered an adverse employment action" and "that such adverse action occurred under 'circumstances which give rise to an inference of unlawful discrimination based upon gender.'" *Id.*  As to the adverse employment action element, the PSBA repeats arguments from its first motion to dismiss that neither the PIP nor revocation of her work-from-home privileges constitute an adverse action.[6] *See id.* at 9–12.  The PSBA also argues that "[t]here are absolutely no allegations in the

---

[6] In its reply brief, the PSBA claims that it is not asking the Court to reconsider its prior ruling because of "the different analysis applicable to determining adverse action in a discrimination claim versus a retaliation claim." *Doc. 41* at 8.  But in its brief in support the PSBA directly states that it "respectfully asks that the Court reconsider" a portion of our analysis contained in our Opinion on the First Motion to Dismiss. *Doc. 35* at 15.  Moreover, the PSBA cites the same case law and even uses the same language in its brief in support of the pending motion to dismiss as its brief in support of the first motion to dismiss. *Compare doc. 15 and doc. 35*.  Nevertheless, the PSBA does correctly note that there are different standards applied to define adverse actions for retaliation claims and to discrimination claims. *Cf Raffaele v. Potter*, No. 09-3622, 2012 WL 33035, *8 (E.D. Pa. Jan. 6, 2012) ("The standard for establishing a materially adverse action for claims of retaliation differs from the standard for establishing an adverse employment action that constitutes an act of discrimination under the ADEA or Title VII.  Unlike discrimination claims, the adverse action required for a retaliation claim need not materially affect the terms and conditions of employment.") (citing *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006)).  We do not address this argument, however, because we find that Shinn has failed to connect the alleged adverse actions to circumstances giving rise to an inference that those actions were taken due to sex discrimination.

Amended Complaint that indicate any adverse actions cited by Shinn were taken because Shinn identifies as female." *Doc. 35* at 18.

Shinn counterargues that her amended complaint "shows that [Shinn] accuses [] Smeltzer of sexual comments, engaging in anti-female remarks, discussing his son's genitals, talking about breasts, remarking on his own vasectomy, and subsequent revocation of privileges and poor treatment proximate to [Shinn's] own complaints and discomfort." *Doc. 40* at 23. Pivotally, Shinn argues that "a reasonable analysis could surely support that [her] PIP, in very close proximity to her complaint about [] Smeltzer and his discriminatory behavior in an email to [] Burke on January 25, 2023, was the result of discrimination based on gender." *Id.* at 24.

At the motion to dismiss stage, a plaintiff must establish a *prima facie* case of sex discrimination, *Sparacino v. Scranton School Dist.*, NO. 3:23-CV-01726, 2025 WL 2524851, *5 (M.D. Pa. Sept. 2, 2025); in other words, a plaintiff must "show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination[,]" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (cleaned up). To allege the fourth element, "the complaint may either (1) allege that 'similarly situated employees who . . . were not members of

15

the same protected class . . . were treated more favorably under similar circumstances' or (2) allege facts that 'otherwise show[ ] a causal nexus between [the employee's] membership in a protected class and the adverse employment action.'" *Drummer v. Trustees of Univ. of Penn.*, 286 F.Supp.3d 674, 681 (E.D. Pa. 2017) (quoting *Greene v. Virgin Islands Water & Power Authority*, 557 Fed. Appx. 189, 195 (3d Cir. 2014) (itself citing *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 n.7 (3d Cir. 2003))) (alterations in original).

Here, Shinn does not allege anything as to similarly situated men who were treated more favorably;[7] thus, to proceed she must allege a causal nexus between the alleged discrimination and the adverse employment action. Shinn does not clarify what adverse employment action she faced as a result of the PSBA's alleged discrimination. *See doc. 33* ¶ 129 ("Plaintiff suffered an adverse employment action."), ¶ 142 ("Plaintiff suffered an adverse employment action."). Upon consideration of her amended complaint, however, we conclude that the adverse employment actions she alleges that she experienced were that she was put on a PIP and that her work-from-home privileges were revoked. Shinn does not, however, connect these actions to the alleged discrimination she experienced. In

---

[7] Although in her brief in opposition Shinn points out that "Smeltzer was allowed to work from home while purportedly having had his privileges for that revoked, while [Shinn] had those same privileges revoked while on a PIP for complaining about [] Smeltzer[,]" she does not allege that she and Smeltzer were similarly situated. *Doc. 40* at 23–24.

16

her brief in opposition to the pending motion to dismiss, Shinn argues that Smeltzer's actions give rise to an inference of discrimination. *Doc. 40* at 23–24. But Smeltzer was not involved in the decision to put Shinn on a PIP and to revoke her work-from-home privileges. As alleged, his actions are too attenuated from the alleged adverse employment actions to adequately allege a causal nexus between the sex discrimination and the adverse employment actions. Accordingly, we conclude that Shinn has failed to state a claim for sex discrimination.

### B. Retaliation Claims.

As described above, we previously denied the PSBA's first motion to dismiss insofar as it sought dismissal of Shinn's retaliation claims. *See docs. 30, 31*. And the amended complaint changes nothing as to those claims. *Compare doc. 33 with doc. 1*. Nevertheless, the PSBA again moves for dismissal of Shinn's retaliation claims. *See docs. 34, 35*. Because we have already ruled that Shinn's factual allegations are sufficient to support retaliation claims at this stage, it appears that the PSBA seeks reconsideration of our previous decision. *See also doc. 38* at 14 ("PSBA respectfully asks this Court to revisit its analysis related to work from home privileges found in its Memorandum Opinion"). Not only is this request for reconsideration procedurally deficient, being brought within a motion to dismiss an amended complaint, but also the PSBA's argument for

reconsideration amounts to nothing more than mere disagreement with our decision, *Cf Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F.Supp. 595, 611 (M.D. Pa. 1996).  Accordingly, we will deny the PSBA's pending motion to dismiss as to Shinn's retaliation claims.

### VII. Conclusion.

For the foregoing reason, we grant in part and deny in part the pending motion to dismiss (*doc. 34*).  Specifically, we dismiss Shinn's sex discrimination claims.  Thus, Shinn's retaliation claims, brought under Title VII and the PHRA, survive.  An appropriate order will issue.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge